Ms. Harris, when you are ready. May it please the court, Justine Harris, Harris-Triscoma for Ms. Adama Sow, defendant, movement appellant in this case, and I would like to reserve one minute for rebuttal. As this court knows very well, the standard for bail pending appeal is whether the question raised on appeal is substantial. This term has a very specific meaning. It's a closed question or one that very well could be decided the other way, or one that is novel, which has not been decided by controlling precedent. That's from United States v. Randall. And the Randall court made crystal clear that the language of 3143, the bail pending appeal statute, did not require the district court to certify that its decision would likely be reversed. Yet that is exactly what the district court did here. It rejected Ms. Sow's motion because it concluded that this court was not likely to reverse. I think the specific language the district court used was unlikely to succeed. When the proper standard is applied, Ms. Sow's appeal clearly presents a substantial question. While we stand by all our points in our motion, given the very limited time for this argument, I'm going to focus on the 994J, Loper-Bright, and Labonte arguments. There are two different kinds of errors that the district court committed with respect to this issue. First, the district court failed to engage in the fundamental Article III task that the Supreme Court has made crystal clear it must engage in. It failed to interpret the governing statute, the very specific prescriptive language that Congress put in 994J that said that 994J is directed to the commission, not the courts. Your Honor, that's true with respect to any statute that gives instruction to an agency of any sort. And yet the Supreme Court has made clear that the question once the instruction is given, the question for an Article III court when there's a question raised about whether or not the way the commission or the way the agency has carried out that instruction, whether or not it follows and is in alignment with the statute, that conflict has to be resolved by the district court or the Article III court taking up the statutory interpretation task. It's simply — it's true, it is directed to the commission, but the question is, has the commission faithfully followed the direction that it was given? And that question has to be resolved by the court. Okay. And so your argument there is on the general appropriateness language. Is that right? It's — your Honor, it's the general — generally appropriate, the first offender and the otherwise serious offense would be the key statutory terms that a court would have to look at to determine whether or not the action by the commission or the guideline is consistent with the statute. Right. And the district court found that your client was not a typical first-time offender, given sort of the scope of the content. Your Honor, it did, and that's the second way that it failed to — that it ran afoul of Loeb or Bright, because in doing so, it simply referred to the guidelines. Right. I guess my point is that that's not inconsistent. If the district court is finding this is a — not a typical first-time offender, then that's perfectly consistent with 944J saying that the general appropriate — recommending the generally appropriate sentence. I think it is actually — it is inconsistent because it found — the district court found that Ms. So was not a first-time offender based on 4C1.1, which is a recent guideline provision enacted in 2023, which said that you're not eligible for a zero-point offender if you get a leadership enhancement. There is nothing in the statute that Congress passed in 1984 that limited first-time offenders to a hypothetical guideline provision 30, 40 years hence relating to zero-point offenders. And in fact, the eligibility requirement that says 4C1.1 and zero-point reduction is only eligible, is only applicable to defendants who don't receive the leadership enhancement, is in direct contravention of the statute. But she did not have that kind of limitation on what a first offender meant. And in fact, as we pointed out in our district court submissions, she is classically — she has — and she's here in court today. I do want to note that, Your Honor. But she has — she's older. She's in her 40s. She has strong family ties. All the sort of empirical attributes that first offenders typically have are true for Ms. So and were noted in the pre-sentence report as well. So the — Loper-Bright, Your Honor, and Labonte — United States v. Labonte — is really instructive in this case. There, the court rejected Amendment 506 to the Career Offender Guidelines because it contradicted 994H's explicit directive, which also was directed towards the commission. Just like 994J, 994H is directed towards the commission. And it directed the commission to set statutory — to set terms of imprisonment at or near the statutory maximum. Justice Thomas, in that decision, found that the commission had not followed Congress's directive in this respect and had only looked at the statutory maximum without prior felony enhancements, without the other enhancements, and therefore ran afoul of Congress's intent and had to be struck down. In that case, the Supreme Court made clear that the commission's discretion must bow to the specific directives of Congress. And if it is in contradiction to the plain language of the statute, the guidelines and the commentary must give way. Loper-Bright makes crystal clear that no discretion is afforded to agency interpretations and here it's the commission, that no discretion, even in the case of an ambiguous statute, that ambiguity does not delegate to the agency, here the commission, any preemptive powers of interpretation. That task always has to be with the district court, with the Article III court, which has the duty to say what the law is. Thank you, counsel. We'll hear from the government next. Good morning, Your Honors. May it please the Court, Henry Ross for the United States. I represent the government both in this appeal and in the district court proceedings below. I'll pick up where Ms. Harris left off with the Section 994J argument. So's Section 994J argument raises no substantial questions for appeal. As an initial matter, I'll note that So is attempting to recast the Section 994J issue as a novel legal issue. However, in sentencing, the defense raised Section 994J solely as part of a standard, traditional Section 3553A argument in urging Judge Caproni to go below the guidelines range. Judge Caproni considered the defense argument, along with her other arguments, under Section 3553A and acted well within her discretion in rejecting it. In any event, even if So had squarely presented this issue, and even if this Court were to review it on appeal de novo as a matter of law, the argument would be completely meritless for the reasons discussed in the government's submission. The Sentencing Commission fully complied with Section 994J's directive by recommending a non-jail sentence for first-time offenders who committed a counterfeiting offense with a low infringement amount and no leadership role, and by contrast, by recommending a substantial term of imprisonment for defendants who, like the defendant here, had a massive counterfeit goods trafficking operation and who were eligible for a leadership enhancement based on their supervision of other employees in connection with the criminal offenses. The argument that Judge Caproni somehow abdicated her Article III role is utterly meritless, Your Honors. Judge Caproni made clear at sentencing that she disagreed with So that her offense was not serious. As Judge Caproni noted and found after a two-day Fatico hearing, So was a high-volume counterfeit goods trafficker who committed this crime over the course of years, who moved millions of dollars through her bank accounts in connection with the counterfeit goods trafficking scheme, and who, as I noted a moment ago, supervised one or more other individuals in her commission of this crime. Accordingly, Your Honors, Judge Caproni's reasoning was plainly correct on this issue, and So's challenge to it does not raise a substantial question on appeal. Unless the Court has any further questions, the government rests on its submission. Thank you, Counsel. Ms. Harrison. Thank you. Your Honor, I want to note that the arguments were presented at length in our sentencing submission to the District Court, pages 52 to 55 of the defendant's sentencing submission, and were argued at oral argument. With respect to the notion that either the guidelines or Judge Caproni's findings below sufficiently address the question of whether or not the sentence and the sentencing guidelines were consistent with 994J, I have a couple of points. One is that in determining the meaning of otherwise serious offense, it's far from clear whether or not that term as a matter of statutory interpretation should be interpreted categorically as the Court has done, as courts have done with respect to crime of violence. Again, otherwise serious offense in 994J follows a reference to crime of violence. Either way, it's important that Judge Caproni also noted at sentencing that, quote, this is an unusual crime that's not prosecuted very often in federal court. I think there were roughly 7 or 16 cases nationwide that she was able to find as precedent. Finally, either way, all Judge Caproni was doing with respect to citing factors relating to the offense or relating to the Fatico hearing was performing the court's duties under 3553A. It cannot be that simply looking at the personal history of the defendant and looking at the seriousness of the crime, that that is sufficient to do the task that Loper-Bright has made clear courts have to do. That we think she overlooked. Your Honor, the question is not the question has to be whether or not the sentencing guideline here with respect to counterfeiting and how it applied to Ms. Soe, whether or not that was consistent with Congress's mandate in 994J that said the commission shall ensure that the guidelines reflect the general inappropriateness of a jail sentence for first-time offenders convicted of non-serious offenses. Whether or not this was a serious offense, like district courts all the time say this is a serious offense when they're sentencing someone. That doesn't engage in the statutory interpretation required by Loper-Bright. Namely, under 994J, is otherwise serious offense satisfied here? That's a particular question that has to be looked at in reference to the statute at issue. May I ask you, is it your position that engaging in a counterfeit operation involving 800,000 counterfeit goods, I'm sorry, 80,000 counterfeit goods, cannot reasonably be viewed as a serious offense? Your Honor, this was, I think there are many arguments that could support that. I think there's obviously arguments on both sides, and here's why. Right, but if there are arguments on both sides, it means that the district court could find that it was a serious offense. And that the commission did not err in concluding that a counterfeiting operation at that level and the leader of such an operation had engaged in a serious offense. So I'm perplexed as to why you think there's an argument here that has any chance of succeeding. Your Honor, the question of an otherwise serious offense is a very particular term in 994J. Here, there was no finding that any of the counterfeit items were actually of such a nature that they would replace or dupe a consumer into buying that item in lieu of the original. So there was no financial loss as a result, no sales loss, no loss of sales revenue, no impact with respect to the conduct or no financial impact on the luxury brands whatsoever. These were low-quality knockoff brands that were sold on Canal Street. It's the kind of products and the kind of counterfeiting case that's rarely brought in federal court. In fact, most of the other cases that we looked at and that the judge looked at involved superfakes, much higher-end operations that are online and actually duping consumers. So is it your position that without proof of financial loss to the bona fide manufacturer that it can't be a serious offense? That it's not an otherwise serious offense akin to a crime of violence in 994J. What is your support for thinking that that's what Congress intended be the benchmark? The language first, the plain language of the statute, Your Honor, because 994J uses the term otherwise serious, and that immediately follows the crime of violence reference. And basic principles of statutory interpretation, and we cite it in our brief, reflect that when Congress uses otherwise, it's referencing other language in that provision. But that doesn't tell us anything about whether there has to be a loss, a demonstrable loss to the original manufacturer. I think it gives us some guidance, Your Honor, because crimes of violence most often include victims, victims where injury is done to the victim in a direct way. And I think if you have this type of economic offense where there's no proven victim, no proven other than some amorphous, and I'm not minimizing it, but still an amorphous damage of reputational integrity to the brand, then I don't think it follows that it fits within the otherwise serious offense as Congress indicated in 994J. And I think, look, I think the statute is significant because after Loper-Bright, that has to be the reference point. After following Labonte and Loper-Bright, that has to be the reference point. And I think it's significant, there's a significant fairness issue here because Labonte obviously involved a government appeal of the career offender guidelines, and Bricker, a recent Sixth Circuit case which applied Loper-Bright to the guidelines, involved a government challenge to the compassionate release statute, and those were both striking down guidelines provisions that were favorable to the defendant and not to the government. It has to be a two-way street, and this new analytical framework should be applied to 994J. I think we have your argument, thank you both. Thank you. Your Honors, I note that my client's surrender date is tomorrow, and to the extent it's possible to hold it in abeyance pending the court's resolution, we would be grateful. Thank you. Thank you. We'll hear argument next in Ekstein v. Pulido Associates, LLC, case numbers 242764 and 242767. Good morning, Your Honors. Mr. Wilkinson. Richard D. Wilkinson for the appellant and cross-appellee. Pulido Associates. May it please the Court, I'd like to point out that I've requested three minutes for rebuttal to address the cross-appeal, and before I begin, I'd like to correct one mistake that I noticed yesterday in preparing in our response and reply brief where I referred to the two persons who transferred their interests in the debtor, in the borrower, as guarantors, and they were not guarantors. They were beneficial ownership interest holders, not guarantors. It doesn't change the argument. They're referred to correctly elsewhere, but I just wanted to point that error out so that the Court was not under a misimpression. So with that, I'd like to start by addressing the main prejudgment interest issue in our appeal, and this is an enormously important issue because it really is a $9 million issue. At the 9.5% contract rate, the total prejudgment interest would be $13,140,000, and the trial court calculated the interest at approximately $4 million at what it considered the court rule rate of 1.5%, which in itself is erroneous and is an issue that I'll address next. That calculation is at page 10 of our initial brief. So I acknowledge that we first have to get past the collateral estoppel issue in order to get to the 9.5 issue under the merger doctrine. However, I think that we should clear that hurdle easily because there is no evidence in this matter that the issue was ever actually litigated at all, no less fully and fairly litigated. The only evidence that the guarantors presented to the district court was that the bank submitted a proposed order that had the 9.5% contract rate in the form of order and that the order that came back from the clerk said interest at the lawful rate instead. The motion was unopposed. There was no evidence that there was a hearing, either live or remote. I think you can take judicial notice of the fact that this all occurred while COVID was going. We were in the thick of the pandemic, and there was an electronic signature on the order. There was not the slightest bit of evidence that there was any actual consideration or opportunity for either side to address the board about what that should be. I mean, the question is whether there was a full and fair opportunity, right? Right, and I respectfully submit that there was no opportunity because there was no hearing of any kind. All we know is that a motion, an unopposed motion went in and an order came out. There was no evidence of an opportunity at all. The doctrine said that the second prong of the doctrine says actually litigated. Now, understand, I am not saying that the issue has to be litigated to the hilt or litigated to the utmost in order for collateral estoppel to apply. But there has to be something, and I respectfully.